## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICARDO T. LARIOS,                      :        Civil No.: 3:14-cv-1572
                                        :
            Plaintiff                   :        (Judge Mariani)
                                        :
    v.                                  :
                                        :
UNITED STATES OF AMERICA, *et al.*,     :
                                        :
            Defendants                  :

### MEMORANDUM

Plaintiff, Ricardo Larios, an inmate formerly confined at the Metropolitan Detention

Center, Brooklyn, New York, ("MDC Brooklyn"), filed a *Bivens*[1] and Federal Tort Claims Act

("FTCA")[2] complaint on August 11, 2014.  (Doc. 1).  The action is proceeding *via* an

amended complaint (Doc. 27), wherein Larios names the following Defendants: the United

States of America, Ellen Mace-Leibson, Michael Borecky, Robert Beaudouin, R. Newland,

L.T. Rarick, Jeremy Simonson, David Steffan, and James Hepner.

Presently pending is Defendants' motion to dismiss pursuant to Federal Rule of Civil

---

[1]   *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).
*Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally
protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an
award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478,
504 (1978).

[2]   The FTCA, 28 U.S.C. § 2679(b)(1), provides that a suit against the United States is the
exclusive remedy for persons seeking recovery for common law torts committed by federal employees
within the scope of their federal employment.  *See also* 28 U.S.C. § 1346(b) (governing jurisdiction).
Because the FTCA is a limited waiver of sovereign immunity which extends to the United States, but not to
its agencies and employees, the United States is the only appropriate defendant in an action brought
under the FTCA.

Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal Rule of

Civil Procedure 56.  (Doc. 38).  For the reasons set forth below, the motion will be granted.

Also addressed herein is the dismissal of Defendants Eva Piotrowski and John Doe

Correctional Officers pursuant to Federal Rule of Civil Procedure 4(m).

## I.    Motion to Dismiss

### A.    Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

2

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

3

*Id.*

## B.    Allegations of the Amended Complaint

On July 25, 2012, Larios was temporarily housed at MDC Brooklyn while being

transported to the Federal Correctional Institution, Schuylkill, Pennsylvania ("FCI-

Schuylkill"). (Doc. 27, p. 5). Upon arrival to MDC Brooklyn, Larios completed an Intake

Screening Medical Form and indicated that he suffered from an epileptic condition and was

restricted to a lower bunk assignment. (*Id.*). Larios had a Medical Duty Status Form also

indicating that he was restricted to a lower bunk due to his medical condition. (*Id.* at p. 6).

Larios alleges that Defendants Piotrowski and Newland failed to ensure that he was

assigned to a lower bunk. (*Id.*). He further asserts that the John Doe Unit Officers ordered

him to sleep on the top bunk. (*Id.*). On July 26, 2012, Larios states that he was assigned to

a different housing unit and was again assigned to the top bunk. (*Id.* at pp. 6-7). Larios

alleges that the John Doe Defendants were deliberately indifferent to his medical needs by

assigning him to a top bunk. (*Id.* at p. 9).

On July 27, 2012, Larios allegedly fell out of the top bunk and sustained injuries as a

result of the fall. (*Id.* at p. 7). Larios' purported injuries include difficulty breathing at night,

back, neck, knee and hip pain, face disfigurement, increased seizures, and post traumatic

stress disorder. (*Id.*). Larios alleges that Defendants Steffan and Mace-Leibson failed to

provide adequate medical treatment for his purported injuries. (*Id.*).

4

Larios states that he received treatment at an outside hospital on July 27, 2012, the day of the alleged fall, and returned to MDC Brooklyn the very same day. (*Id.* at p. 11). Upon his return to MDC Brooklyn, Defendant Beaudouin cosigned an administrative note written by another practitioner, but did not treat Larios. (*Id.*).

Larios asserts that he requested a continuous positive airway pressure ("CPAP") machine to help treat his breathing condition at night. (*Id.* at p. 8). He alleges that the medical Defendants were negligent in that they failed to provide a CPAP machine, and failed to conduct adequate tests for his medical ailments. (*Id.* at pp. 9-10).

Larios alleges that Defendant Borecky was aware of his deviated septum, but failed to record this condition in his medical chart. (*Id.* at p. 10). He further asserts that Defendant Borecky diagnosed him with moderate sleep apnea but did not consider his deviated septum when making his diagnosis. (*Id.*).

Larios next alleges that Defendants Mace-Leibson, Steffan, Rarick, Simonson, and Hepner retaliated against him because he filed an administrative tort claim on November 7, 2013. (*Id.* at pp. 11-12). In 2014, Larios asserts that he suffered a seizure and Defendant Mace-Leibson accused him of feigning seizures in order to bolster his tort claim. (*Id.* at p. 12). He further avers that Defendant Mace-Leibson issued incident reports charging Larios with feigning illness and misuse of medication. (*Id.* at pp. 12, 14). Defendant Rarick also allegedly issued Larios an incident report for faking a seizure. (*Id.* at p. 13). Larios claims

5

that Defendant Hepner placed him in the Special Housing Unit for faking a seizure. (*Id.* at pp. 12, 14). Lastly, Larios alleges that Defendant Simonson falsified his medical records by representing that Larios intentionally slept on the top bunk at MDC Brooklyn because he did not follow instructions of the medical staff. (*Id.* at pp. 14-15).

For relief, Larios seeks compensatory and punitive damages, and any other relief deemed appropriate. (*Id.* at p. 16).

## C. Discussion

### 1. Certificate of Merit

Larios asserts a claim under the FTCA that Defendants failed to provide him with adequate and appropriate medical care subsequent to his fall from the top bunk at MDC Brooklyn. (Doc. 27, pp. 5-7). The United States argues that Larios' FTCA claim must be dismissed because he failed to file a certificate of merit. (Doc. 42, pp. 16-20). Pennsylvania Rule of Civil Procedure 1042.3 requires that a plaintiff file a certificate of merit ("COM") from a medical expert with respect to a professional negligence claim against the United States.[3] Rule 1042.3 provides as follows:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

---

[3] A COM must be filed for a Pennsylvania state professional negligence claim or the claim will be dismissed. *Velazquez v. UPMC Bedford Memorial Hospital*, 328 F.Supp.2d 549, 558 (W.D. Pa. 2004).

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

PA. R. CIV. P. 1042.3(a).

If a plaintiff fails to file the required certificate within sixty (60) days of filing the complaint, the proper procedure in federal practice is to file a motion pursuant to Federal Rule of Civil 12(b)(6) to dismiss the professional negligence claim without prejudice. *Stroud v. Abington Mem'l Hosp.*, 546 F.Supp.2d 236, 250 (E.D. Pa. 2008).[4] "[T]he sixty-day deadline for filing a COM will be strictly construed and not lightly excused." *Id.* The rule applies to *pro se* as well as represented plaintiffs, and constitutes a rule of substantive state law with which plaintiffs in federal court must comply. *See Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007); *Maruca v. Hynick*, 2007 WL 675038, at *3 (M.D. Pa. 2007) ("[T]he language of Rule 1042.3(a) - i.e., 'or the plaintiff if not represented ... shall file ... a certificate of merit' expressly requires that a *pro se* plaintiff must file a certificate of

---

[4]    The state statute provides that defendants may file a praecipe for entry of judgment of *non pros. See* PA. R. CIV. P. 1042.6.

7

merit.").

Failure to file a certificate of merit under Rule 1042.3(a), or a motion for extension under Rule 1042.3(d), is fatal unless the plaintiff demonstrates that his failure to comply is justified by a "reasonable excuse." *Perez v. Griffin*, 304 F. App'x. 72 (3d Cir, 2008) (per curiam) (nonprecedential); *see also Womer v. Hilliker*, 908 A.2d 269, 279-80 (Pa. 2006) (holding that a court may reconsider judgment entered for failure to comply with Rule 1042.3 if the plaintiff demonstrates a "reasonable excuse" for the noncompliance); PA. R. CIV. P. 1042.6 (authorizing entry of non pros judgment if a malpractice plaintiff fails to comply with Rule 1042.3).

In the instant case, Larios was required to file a COM producing expert testimony that his medical treatment deviated from acceptable medical standards, and to show that the deviation was the proximate cause of his alleged injury. Larios filed his amended complaint on February 2, 2015. (Doc. 27). Thus, he was required to file a COM on or before April 3, 2015. Larios failed to do so. The undisputed record reflects that Larios neither filed a COM, nor requested an extension of time in which to do so. Because Rule 1042.3(a) expressly requires that a *pro se* plaintiff file a COM, Larios is not excused from filing a COM simply because he proceeding as a *pro se* litigant. *See Maruca*, 2007 WL 675038 (noting that approximately ten months passed since the plaintiff filed an amended complaint and had yet to file a COM).

Unless Larios can show a reasonable explanation or legitimate excuse for his failure

to timely file a COM, his FTCA medical malpractice claim is subject to dismissal without

prejudice. *See Perez*, 304 F. App'x at 74 ("failure to comply with Rule 1042.3 is not fatal to

claims of professional liability if the Plaintiff can show 'reasonable excuse' for the

noncompliance") (quoting *Womer*, 908 A.2d at 279-80). Larios failed to present a

reasonable explanation or legitimate excuse for noncornpliance with the COM requirement.

Indeed, in his opposition brief, Larios failed to address the COM requirement or offer any

argument as to why his FTCA should not be dismissed for noncompliance with the COM

requirement. *See* (Doc. 50). To the extent that Larios suggests that his medical claims are

of ordinary negligence, rather than professional negligence, i.e., "that even a lay person

would have recognized the need for a doctor's attention," this claim fails. (Doc. 50, p. 6).

In *Grundowski v. United States*, 2012 WL 1721781 (M.D. Pa. 2012), the Court set

forth the proper inquiry courts should make when determining whether a claim is one of

ordinary negligence, rather than medical malpractice, as follows:

> In conducting this inquiry, "a court must ask two fundamental questions in
> determining whether a claim sounds in ordinary negligence or medical
> malpractice: (1) whether the claim pertains to an action that occurred within
> the course of a professional relationship; and (2) whether the claim raises
> questions of medical judgment beyond the realm of common knowledge and
> experience.". . . When evidence is predicated "upon facts constituting medical
> treatment . . . involv[ing] diagnosis, care, and treatment by licensed
> professionals," the evidence "must be characterized as [evidence of]
> professional negligence." . . . As noted by the Third Circuit, "a complaint
> 'sounds in malpractice' where 'the conduct at issue constituted an integral

9

part of the process of rendering medical treatment.'"

*Id.* at *6 (citations omitted). Applying this inquiry to the instant case, Larios' claim is that the

medical Defendants failed to provide appropriate treatment for the injuries he sustained

after falling from the top bunk. This claim involves decisions regarding the rendering of

medical treatment, which involves professional medical judgment beyond the realm of the

lay person. It cannot be said that a decision of whether, when or what type of medical

treatment should be provided "is so simple or the lack of skill or care is so obvious as to be

within the range of experience and comprehension of even non-professional persons."

*Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997). Accordingly, a certificate of merit

is required for this professional negligence FTCA claim. *See Paige v. Holtzapple*, 2009 WL

2588849, at *10-11 (M.D. Pa. 2009) ("Where the conduct at issue constituted an integral

part of rendering medical treatment, and involved diagnosis, care, and treatment by a

licensed professional, ... the action is one that is characterized as a professional negligence

action requiring expert testimony."). Consequently, Larios' FTCA claim against the United

States will be dismissed for failure to file a COM.

### 2.      *Retaliation is not a proper claim under the FTCA*

The United States next seeks dismissal of Larios' retaliation claim on the ground that

it is not a cognizable FTCA claim. (Doc. 42, pp. 20-22).

Pursuant to the FTCA, Congress has consented to liability for money damages suits

10

against the United States for injury or loss of property "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).  The FTCA allows recovery for damages for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee. 28 U.S.C. § 2674; *United States v. Muniz*, 374 U.S. 150 (1963).

Larios alleges that Defendants retaliated against him because he filed an administrative tort claim.  (Doc. 1, pp. 11-12).  A retaliation claim is not viable under the FTCA, as the FTCA does not provide a remedy for constitutional torts. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994); *Williams v. United States*, 242 F.3d 169, 175 (4th Cir. 2001).  Because the FTCA contains no waiver of immunity for claims of federal constitutional violations, Larios' retaliation claim is not cognizable under the FTCA and will be dismissed. *See Coudon v. Duffy*, 446 F.3d 483, 499 (3d Cir. 2006) (finding that "the United States is not liable under the FTCA for money damages for suits arising out of constitutional violations"); *James v. United States*, 2009 WL 2605305, at *5 (W.D. Pa. 2009) ("It is well-settled that the FTCA does not waive the United States' sovereign immunity for constitutional torts that may have been committed by its employees").

## II.    **Motion for Summary Judgment**

### A.    **Standard of Review**

11

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P.  56(c)(3). "Inferences should be drawn in the light most favorable to the

12

non-moving party, and where the non-moving party's evidence contradicts the movant's,

then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am.,*

*Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## B.    Statement of Undisputed Facts

Rule 56 of the Federal Rules of Civil Procedure provides: "If a party fails to properly

support an assertion of fact or fails to properly address another party's assertion of fact as

required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the

motion." FED. R. CIV. P. 56(e)(2). Similarly, Middle District of Pennsylvania Local Rule 56.1

states: "[a]ll material facts set forth in the statement required to be served by the moving

party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1. Larios failed to file a responsive statement of facts as required by the Federal Rule of Civil Procedure 56(e)(2) and Local Rule 56.1, despite being granted additional time to do so. (Doc. 49, ¶ 3). Thus, the undisputed facts, taken from Defendants' statement of material facts, (Doc. 43, Statement of Material Facts ("SMF")), and the exhibits submitted therewith, are as follows.

Larios was temporarily held at MDC Brooklyn between July 24, 2012 and August 1, 2012. (SMF ¶ 3).

On November 7, 2013, Larios filed an administrative tort claim with the BOP Northeast Regional Office, alleging negligence in assigning him to a top bunk. (*Id.* at ¶ 4; Doc. 43, Attach. 3). Larios subsequently filed two (2) supplements to his tort claim, complaining that Defendants failed to provide medical treatment for the injuries he sustained after falling from the top bunk, and that he was subjected to retaliation by staff at FCI-Schuylkill for filing the tort claim. (SMF ¶ 5; Doc. 43, Attach. 3). On May 6, 2014, the Regional Office denied the claim. (SMF ¶ 6; Doc. 43, Attach. 3).

On September 29, 2015, a search of BOP records was conducted to determine whether Larios exhausted the administrative process as to each of the constitutional claims asserted in the amended complaint. (Doc. 43-1, pp. 50-58). This review revealed that Larios filed a total of sixteen administrative remedies during his incarceration with the BOP.

(SMF ¶ 8). Two of the remedies were filed before the events alleged in the amended complaint when Larios was housed at the Federal Correctional Institution, Fort Dix, New Jersey. (*Id.* at ¶ 10). Fourteen were filed when Larios was housed at FCI-Schuylkill. (*Id.* at ¶ 11). Of those fourteen remedies, eleven concerned the disciplinary process for incident reports issued against Larios, two complained about the loss of a UNICOR job, and one complained about a urinalysis test. (*Id.* at ¶¶ 12-14).

## C.    Discussion

Defendants seek dismissal of the amended complaint, or an entry of summary judgment, on the following grounds: (1) Larios failed to exhaust administrative remedies for his *Bivens* claim prior to filing suit; (2) Larios failed to state a First Amendment retaliation claim; (3) Larios failed to establish that Defendants were deliberately indifferent to his medical needs; and, (4) all Defendants are entitled to qualified immunity. (Doc. 42). The Court finds that Defendants' argument regarding failure to exhaust administrative remedies is dispositive of the motion, thus the alternative arguments need not be addressed. *See Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2010) ("exhaustion is a threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time") (internal citation omitted).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing

a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v.*

16

Brennan, 219 F.3d 279 (3d Cir. 2000).

The Federal Bureau of Prisons has an administrative remedy procedure through which inmates can seek formal review of an issue relating to any aspect of his or her confinement.  28 C.F.R. § 542.10(a).  In order to exhaust appeals under the administrative review procedure, an inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter.  28 C.F.R. § 542.13(a).  If the informal resolution is unsuccessful, then the inmate must execute the appropriate form to bring the matter to the attention of the warden, within twenty calendar days of the date of the incident.  28 C.F.R. § 542.14(a).  If the inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within twenty calendar days.  28 C.F.R. § 542.15(a).  If the response of the Regional Director is not satisfactory, the inmate may then appeal to the General Counsel of the BOP within thirty calendar days, which office is the final administrative appeal level in the BOP.  28 C.F.R. § 542.15(a).  No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel.  28 C.F.R. § 542.15(a).  If an administrative remedy is rejected for a procedural deficiency, the remedy is returned to the inmate and the BOP provides the inmate with a written notice explaining the reason for the rejection.  28 C.F.R. § 541.17(b).

In the ordinary course of business, computerized indices are kept of requests for administrative review filed by inmates.  On or about September 29, 2015, a search of BOP

17

records was conducted to determine whether Larios exhausted the administrative process as to each of his claims. (Doc. 43-1, Administrative Remedy Generalized Retrieval, pp. 50-58). This review revealed that Larios filed a total of sixteen administrative remedies, none of which relate to the claims in the amended complaint. (*Id.*). As outlined above, two of the remedies were filed before the events alleged in the amended complaint, and fourteen were filed while Larios was housed at FCI-Schuylkill. (*Id.*). Of those fourteen remedies, eleven concerned the disciplinary process for incident reports issued against Larios, two complained about the loss of a UNICOR job, and one complained about a urinalysis test. (*Id.* at pp. 52-58). Larios did not file any administrative remedies complaining about the injuries sustained when he fell from the top bunk, the medical care provided by Defendants, or acts of retaliation for filing an administrative tort claim. *See* (Doc. 43-1, Administrative Remedy Generalized Retrieval).

In an attempt to excuse the exhaustion requirement, Larios argues that Defendants were frustrating his efforts to utilize the administrative review process. (Doc. 50, pp. 3-4). Courts have invariably held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable. *See Todd v. Benning*, 173 F. App'x 980, 982-83 (3d Cir. 2006) (expressing approval of the Eighth Circuit's holding in *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) that administrative remedies were not available where prison officials "purportedly prevented

prisoner from employing the prison's grievance system"). Examples of affirmative

misconduct on the part of prison officials include: (1) threatening a prisoner in an attempt to

thwart the prisoner's attempts to exhaust, *see Harcum v. Shaffer*, 2007 WL 4167161, at \*5

(E.D. Pa. 2007) (finding administrative remedies unavailable where prison officials

threatened plaintiff with "opposition to his future prerelease application, parole, or outside

work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate

grievance forms in response to inmate inquiries, *see Mitchell v. Horn*, 318 F3d 523, 529 (3d

Cir. 2003), (3) advising an inmate that his or her situation does not require a grievance, *see*

*Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were

unavailable to plaintiff who had been advised by prison official that he must wait until the

end of the prison's investigation before filing a grievance), and (4) failing to file or respond to

a prisoner's grievances, *see Camp*, 219 F.3d at 280-81 (finding that administrative remedies

were unavailable where prison officials refused to file plaintiff's grievances regarding their

coworkers).

There is no indication, based upon the evidence and review of the Administrative

Remedy Generalized Retrieval Information, that Larios was prevented or hindered from

pursing administrative remedies. *Banks v. Roberts*, 2007 WL 1574771, at \*5 (M.D. Pa.

2007) (holding that while the plaintiff alleged that the defendants "obstructed" his efforts to

pursue administrative remedies by refusing to provide proper forms and instructing others

not to provide the necessary forms, the grievance process was available to him, and therefore, plaintiff's claim was procedurally defaulted for failure to comply with the process). In fact, during his incarceration, Larios filed several grievances and administrative remedies, none of which relate to the allegations in the amended complaint, which clearly undermines his assertion that he was obstructed from seeking administrative relief. Instead of raising his constitutional claims through the proper administrative channels, Larios chose to file an administrative tort claim with the BOP Northeast Regional Office, alleging negligence in assigning him to a top bunk, failure to provide adequate medical treatment, and retaliation. (SMF ¶¶ 4-6; Doc. 43, Attach. 3). At no time did Larios pursue proper administrative channels regarding his *Bivens* claim.

Larios' brief in opposition to Defendants' motion contains unsupported and conclusory assertions that prison officials obstructed his attempt to exhaust the administrative remedy process. Larios sets forth absolutely no facts explaining how prison officials purportedly interfered with his ability to exhaust administrative remedies and offers no evidence to support this assertion. Rather than provide any evidence that he properly exhausted administrative remedies concerning his *Bivens* claim, Larios asserts that the declaration submitted by Defendants proclaiming that he failed to exhaust administrative remedies is "inherently unreliable." (Doc. 50, pp. 2-3). Larios' argument that the BOP's records are unreliable is merely conclusory. The Court will consider the Administrative

Remedy Generalized Retrieval Information as part of Larios' grievance records and, thus, "indisputably authentic documents." *See Spruill*, 372 F.3d at 223 (suggesting that an inmate's grievance records are "indisputably authentic documents").

A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. *See Anderson*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986); *see also* FED. R. CIV. P. 56(c), (e). Larios has failed to meet his burden with respect to the administrative exhaustion of his *Bivens* claim. Defendants are therefore entitled to an entry of summary judgment on this claim.

Moreover, Larios essentially concedes that he failed to exhaust his administrative remedies, and requests that this "civil suit [] be stayed and held in abeyance pending the conclusion of the BOP's Administrative Remedy process", or, in the alternative, that the Court excuse him from the exhaustion requirement. (Doc. 50, pp. 4, 11). The Court will deny Larios' request to stay all proceedings. Administrative remedies must be exhausted prior to the initiation of suit. *See Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit,

including a *Bivens* action."); *Millbrook v. United States*, 8 F.Supp.3d 601, 611 (M.D. Pa.

2014) ("Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust

his available administrative remedies before bringing a civil rights action. '[E]xhaustion must

occur prior to filing suit, not while the suit is pending.'") (citations omitted); *Sharpe v.*

*Medina*, 450 F. App'x 109, 112 (3d Cir. 2011) (affirming the district court's denial of inmate's

request to stay the proceedings to allow him to exhaust administrative remedies, and stating

that "the exhaustion of all available administrative remedies is a precondition to filing suit").

Moreover, Larios' present request to stay this matter to allow him to exhaust his

administrative remedies undermines any argument that exhaustion of administrative

remedies would be futile because the institution would reject the claim. *See Nyhuis*, 204

F.3d at 71 (stating that there is no futility exception to the exhaustion requirement under any

circumstances).

The Court will also deny Larios' request to excuse him from properly exhausting

administrative remedies. The Third Circuit recognizes a "reluctance to invoke equitable

reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v.*

*Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). An inmate's failure to exhaust will only be

excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d

Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was

misled or that there was some extraordinary reason he was prevented from complying with

the statutory mandate." *Davis*, 49 F. App'x at 368.  The Third Circuit has recently stated

that the institution "rendered its administrative remedies unavailable to [an inmate] when it

failed to timely (by its own procedural rules) respond to his grievance and then repeatedly

ignored his follow-up requests for a decision on his claim." *Robinson v. Superintendent*

*Rockview SCI*, No. 14-2994, 2016 WL 4010438, at *5 (3d Cir. 2016).  Unlike *Robinson*,

there are no allegations in the instant matter that the institution delayed in responding to any

grievances or repeatedly ignored requests for a decision on grievances.  Larios failed to

present any evidence that he was he misled by prison officials, was impeded in filing a

grievance, or that some other extraordinary circumstance prevented him from complying

with the grievance process.

## III.   Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with

the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the
> court -- on motion or on its own after notice to the plaintiff -- must dismiss the
> action without prejudice against that defendant or order that service be made
> within a specified time.  But if the plaintiff shows good cause for the failure,
> the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Defendants Eva Piotrowski and John Doe Correctional Officers have never been

served in this case, nor has an attorney entered an appearance on their behalf.  These

Defendants were named in the amended complaint that was filed on February 2, 2015 and, to date, have not been served.

The Court must engage in a two-step process in determining whether to dismiss the non-served Defendants or grant the Plaintiff a further extension to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).

Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Larios failed to establish good cause. Larios' *pro se* status is not good cause to excuse his failure to timely serve and identify these Defendants. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004). Additionally, Larios failed to request an

enlargement of time to serve these Defendants. *See McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir.1998) (noting that good cause is generally established when a plaintiff moves for an extension of time before the expiration of the 120 days service period). Thus, the Court finds that Larios failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss these defendants, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m). After the expiration of the ninety day time period set forth in Rule 4(m), the Court notified Larios that the amended complaint against Defendants Eva Piotrowski and John Doe Correctional Officers was subject to dismissal, and granted him extensions of time to serve these Defendants. (Docs. 51, 52, 54). Additionally, the parties have engaged in discovery, and the Court has granted Larios' specific requests that Defendants answer his interrogatories. (Docs. 53, 54). Through discovery, Defendants provided Larios with Defendant Piotrowski's last known address, and represented that they are unable to properly identify the John Doe Correctional Officers. (Doc. 55). Larios requests that the Court appoint an investigator to ascertain an alternate address for Defendant Piotrowski, or order the Defendants to diligently search for an alternate address for Defendant Piotrowski. (Doc. 55, pp. 1-2). Plaintiff further requests that the Court order Defendants to review prison records, reports, and video footage from 2012 to properly

identify the John Doe Correctional Officers. (*Id.* at p. 2). It is Larios' responsibility to properly identify all Defendants, and provide accurate mailing addresses for the Defendants, in a timely fashion. Larios has been granted several opportunities to effect proper service, and was notified on several occasions that the non-served Defendants were subject to dismissal pursuant to Federal Rule of Civil Procedure 4(m). (Docs. 51, 52, 54). Larios, however, has failed to identify and serve these Defendants. As a result, the non-served Defendants will be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as they have not been served within ninety days of the date on which they were named as Defendants in this case.

## IV.   Conclusion

Based on the foregoing, Defendants' motion will be granted. Defendants Eva Piotrowski and the John Doe Correctional Officers will be dismissed from this action pursuant to Federal Rule of Civil Procedure 4(m).

An appropriate Order shall issue.

Date: September __20__, 2016

Robert D. Mariani
United States District Judge